UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 19-259-1 |
| VERSUS | JUDGE DONALD E. WALTER |
| MARTY JOHNSON | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a motion for compassionate release filed by the defendant, Marty Johnson ("Johnson"). See Record Document 242. The Government opposes Johnson's motion. See Record Documents 249 and 256. Johnson filed two responses. See Record Documents 251 and 258. Based on the following, the motion for compassionate release is **DENIED**.

**BACKGROUND**

Johnson was the owner of a mental health rehabilitation clinic. He and his co-defendant, an employee of the clinic, fraudulently billed Medicaid for illegitimate services from 2014 to 2018. See Record Document 141-5 at 1-2. On October 25, 2021, Johnson pled guilty to conspiracy to commit healthcare and wire fraud. See Record Document 141 at 1. Johnson stipulated to a loss of $3.5 million, and he was ordered to pay $3.5 million in restitution to the Government. See Record Document 167. On April 19, 2022, Johnson was sentenced by this Court to a term of sixty months of imprisonment. See Record Document 163. His sentence was later reduced to fifty-seven months of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). See Record Document 254. Johnson is currently housed at the Federal Correctional Institution Butner, North Carolina ("BOP Butner"), and he has a projected release date of March of 2026.

Johnson filed this motion for compassionate release, requesting a reduction in his sentence based on his age, length of time served, his medical issues, COVID-19, and rehabilitation. See Record Document 242 at 1-2. Johnson lists the following medical conditions to support his motion: (1) stroke; (2) hypertension; (3) hyperlipidemia (high cholesterol); (4) prostate cancer; (5) obesity; (6) cervical radiculopathy; (7) anxiety disorder; (8) osteoarthritis; (9) prostatic hypertrophy; (10) insomnia; (11) rhinitis; (12) cerebral infection; and (13) immunocompromised condition. See id. at 9-19.

## LAW AND ANALYSIS

### I. Exhaustion of Remedies.

A court may consider compassionate release motions directly from prisoners. See 18 U.S.C. § 3852(c)(l)(A). But before a prisoner pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time he files his request with the warden. Id. Johnson previously filed a request for relief through the Bureau of Prisons ("BOP") and that request was denied. See Record Document 242-3. Johnson then filed a motion in this Court seeking relief on the same grounds: a sentence reduction because he presents "extraordinary and compelling reasons" based on his age, the length of time served, changes in the law, rehabilitation, the resurgence of COVID-19, and his life threatening serious medical issues. See Record Document 242 at 1-2. The Government concedes Johnson exhausted his administrative remedies. See Record Document 256 at 5; see also 18 U.S.C. § 3582(c)(1)(A). Therefore, Johnson exhausted his administrative remedies.

### II. Extraordinary and Compelling Circumstances.

Generally, "[a] court may not modify a term of imprisonment once it has been imposed . . ." unless an exception applies. 18 U.S.C. § 3582(c). One exception allows a court to reduce an

inmate's sentence after the court finds (1) that extraordinary and compelling reasons exist and warrant such a reduction; (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission; and (3) an examination of the Section 3553(a) sentencing factors supports a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A)(i)–(ii). The inmate bears the burden of showing why a reduction is justified. See United States v. Clark, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

Congress did not define "extraordinary and compelling reasons" and instead charged the Sentencing Commission with issuing general policy statements outlining the appropriate use of the sentence modification provisions set forth in Section 3582(c), including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied. . . ." 28 U.S.C. § 994(a)(2)(c), (t). The Sentencing Commission amended the Sentencing Guidelines effective November 1, 2023. As amended, "[e]xtraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. U.S.S.G. § 1B1.13(b).

To determine whether Johnson's medical conditions constitute extraordinary and compelling reasons to reduce his sentence, the Court takes guidance from the Sentencing Commission's policy statement, Section 1B1.13(b)(1).[1] The Sentencing Commission identified

---

[1] On June 14, 2024, the Government filed an opposition to Johnson's motion for compassionate release, arguing Sections 1B1.13(b)(6) and 1B1.13(c) do not apply. See Record Document 249. Johnson filed a reply to the Government's opposition, stating that he did not assert any arguments under Sections 1B1.13(b)(6) nor 1B1.13(c) to support his motion for compassionate release. See Record Document 251. After reviewing Johnson's reply, the Government concedes that Johnson

specific criteria for when a defendant's medical circumstances constitute an extraordinary and compelling reason to reduce his or her sentence. See U.S.S.G. § 1B1.13(b)(1). Johnson argues the evidence demonstrates an "extraordinary and compelling" reason under the definition given in Section 1B1.13(b)(1)(B)(i); specifically, Johnson "is suffering from serious life threatening medical issues at the present time." Record Document 242 at 9. Further, Johnson argues that he "is at an increased risk to having severe and potentially fatal complications if he is infected with COVID-19 due to his immunocompromised condition[,]" which falls under the definition given in Section 1B1.13(b)(1)(D). Id. at 20.

### A. Section 1B1.13(b)(1)(B)(i).

An extraordinary and compelling reason for compassionate release exists under Section 1B1.13(b)(1)(B)(i) when a defendant is

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(B)(i). As previously mentioned, Johnson contends that he suffers from the following serious physical or medical conditions and these medical conditions are an extraordinary and compelling reason for compassionate release: (1) stroke; (2) hypertension; (3) hyperlipidemia (high cholesterol); (4) prostate cancer; (5) obesity; (6) cervical radiculopathy; (7) anxiety disorder; (8) osteoarthritis; (9) prostatic hypertrophy; (10) insomnia; (11) rhinitis; (12) cerebral infection; and (13) immunocompromised condition. See Record Document 242 at 9-19.

---

did not raise either of those sections as a basis to support his motion for compassionate release. See Record Document 256.

4

The Court acknowledges that these are serious medical conditions. However, the legal standard under subsection (B)(i) requires that Johnson's physical or medical conditions "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B)(i). Johnson bears this burden. See Clark, 451 F. Supp. 3d at 656.

The Government argues that Johnson "merely claims he suffers from the certain medical conditions but fails to offer any discussion as to how the conditions [affect] his day-to-day life in BOP custody." Record Document 256 at 7. The Government highlights that Johnson's extensive medical records show he is receiving adequate medical care and attention from the BOP. See id. Johnson concedes he is receiving treatment at BOP Butner for his prostate cancer, which is confirmed in his medical records. See Record Document 242 at 12. But he maintains that relief is warranted because that his health is deteriorating on a daily basis as he ages. He further contends that the BOP does not have specialists to treat his medical issues and has not referred Johnson to see specialists for treatment. See Record Document 258 at 2. While the Court understands Johnson's concerns, Johnson has failed to demonstrate that BOP Butner is not providing him with appropriate care or that he has a substantially diminished ability to provide self-care, and thus, he fails to satisfy the Section 1B1.13(b)(1)(B)(i) standard. See United States v. Lawrence, No. 21-10962, 2022 WL 522880, at *1 (11th Cir. Feb. 22, 2022) (denying motion for compassionate release by inmate who asserted that his medical conditions placed him in a "high-risk category," and he has been unable to see outside specialists for these conditions because of the pandemic); see also United States v. Purpera, No. 18-19, 2024 WL 329541, at *3 (W.D. Va. Jan. 29, 2024) ("Just because the treatment [the inmate] would receive outside the BOP may be "better" or "more

consistent" does not mean that continuing medical care in the BOP would cause a "serious deterioration in [his] health or death.").

**B. Section 1B1.13(b)(1)(D).**

Prior to the 2023 Sentencing Guideline amendments, district courts evaluating claims for compassionate release based on COVID-19 were left to engage in a highly fact-intensive, totality of the circumstances analysis. See, e.g., United States v. Wright, No. 16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant."). But even then, it was clear to district courts that the spread of COVID-19 and the conditions of confinement in jail, alone, were not sufficient grounds to justify a finding of extraordinary and compelling circumstances. See United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."). As the Fifth Circuit explained, district courts had broad discretion in evaluating COVID-19 compassionate release claims, even where a petitioner established a severe health condition put them at serious risk of complications from COVID-19. See id. at 434-35. The Fifth Circuit also noted that when courts did grant compassionate release based on risk of COVID-19 complications, they "largely [did] so for defendants who had already served the lion's share of their sentences and presented multiple, severe health concerns." Id.

In the revised Guidelines effective November 1, 2023, the Sentencing Commission incorporated factors courts considered during the COVID-19 pandemic to assess whether a prisoner presented extraordinary and compelling circumstances. The Guidelines now state that extraordinary and compelling circumstances exist based on the prisoner's medical condition(s) if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing

>   public health emergency declared by the appropriate federal, state, or local authority;
>
>   (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
>   (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § lB1.13(b)(l)(D).

Johnson argues that his present BOP environment possesses a high risk of contracting COVID-19. See Record Document 242 at 21. Johnson is currently housed at BOP Butner. The facility is not at risk of an infectious disease outbreak nor public health emergency. The COVID-19 public health emergency expired in May 2023. See Press Release, HHS Secretary Xavier Becerra, Secretary, Dep't Health & Hum. Servs., Statement on End of the COVID-19 Public Health Emergency, (May 11, 2023).

Johnson provides no evidence that his medical conditions put him at risk based on the conditions at his current facility nor that any risk could not be mitigated by the BOP. Johnson's medical records show he has not contracted COVID-19 while serving his sentence in BOP custody. Quite the opposite—there are multiple references in Johnson's medical records indicating that Johnson tested "negative" for COVID-19. See Record Document 257 at 13, 127, 163, 168, 268, and 291; see also Record Document 257 at 221, 229, 239, and 251. Further, Johnson's medical records reflect that BOP administered him vaccinations for COVID-19. See Record Document 257 at 121 and 129. As such, Johnson's medical records reflect that BOP is taking the necessary measures to mitigate, reduce, and minimize the risk of contracting COVID-19 in BOP correctional facilities, and, more specially, at BOP Butner.

While the Court notes Johnson does suffer from strokes, high blood pressure, and an immunocompromised condition, which may pose some risk of complications from COVID-19, these diagnoses themselves are insufficient to show that extraordinary and compelling medical circumstances exist such that relief is justified. Since the revised Guidelines became effective, other district courts in this circuit have denied compassionate release to defendants with similar medical conditions seeking relief based on the risks associated with COVID-19. See, e.g., United States v. Taylor, No. 17-09-01, 2024 WL 150221, at *3 (E.D. Tex. Jan. 11, 2024) (denying compassionate release to a petitioner with diabetes, hyperlipidemia, obesity, enlarged prostate, GERD, lower back pain, depression, and hypothyroidism based on the revised Guidelines); United States v. Bates, No. 13-66, 2024 WL 3274986, at *3 (E.D. La. July 2, 2024) (denying compassionate release to a petitioner with hypertension, obesity, chronic kidney disease, major depressive disorder, and panic disorder based on the revised Guidelines); United States v. Wilson, No. 00-50050, 2024 WL 4847389, at *3 (W.D. La. Nov. 18, 2024) (denying compassionate release to a petitioner with high blood pressure, diabetes, and high cholesterol based on the revised Guidelines). Johnson fails to establish that he is subject to an extraordinary and compelling circumstance justifying a reduction of sentence.

**III. Section 3553(a) Factors.**

Even assuming that Johnson had identified extraordinary and compelling reasons, he is still not entitled to relief under the factors contained in 18 U.S.C. § 3582 because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against a reduction. Section 3553(a), which sets forth the factors to consider in imposing sentence, requires the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentencing imposed (A) to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a).

The Court finds Johnson has not demonstrated that he qualifies for compassionate release under these guidelines. Johnson was sentenced by this Court for conspiracy to commit healthcare and wire fraud. Johnson and his co-defendant fraudulently billed Medicaid for illegitimate services from 2014 to 2018. Johnson stipulated to a loss of $3.5 million, and he was ordered to pay $3.5 million in restitution to the Government. The Government highlights that Johnson "engaged in conduct to frustrate and circumvent the [G]overnment's efforts to collect restitution" by "transferring several of his properties and assets to family members in order to shield them from the reaches of the [G]overnment." Record Document 256 at 9. The Government further notes that as of the filing of its motion, the co-defendant "who has considerably lesser assets than [Johnson], has paid $522,504.84 towards restitution" whereas "[Johnson] in contrast has only paid $135,741.00 towards his restitution obligation." Id. Additionally, Johnson was originally sentenced by this Court to a term of sixty months of imprisonment, and his sentence was later reduced to fifty-seven months of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). See Record Documents 163 and 254. The reduction was imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the Sentencing Commission. In light of these and other facts, reducing Johnson's sentence would not reflect the seriousness of the offense, promote respect for the law, or afford an adequate deterrence to criminal conduct. Accordingly, the Section 3553(a) factors weigh against granting relief.

This Court recognizes Johnson's certifications of completion of BOP programs and his noteworthy and admirable rehabilitation efforts. See Record Document 242-2 at 8-34. Regardless,

9

Johnson has failed to make a showing of extraordinary and compelling reasons warranting compassionate release, and a consideration of the Section 3553 factors indicates that release is inappropriate. It is ultimately the defendant who is to blame for the situation that currently exists. The Court finds that Johnson has not met his burden for compassionate release.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Johnson's motion is **DENIED**.

An order consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 13th day of February, 2025.

*Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE